UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

KILROY BROWN,

                              Petitioner,

        v.                                              9:19-CV-1295
                                                        (TJM)

EDWARD BURNETT, Superintendent,
Fishkill Correctional Facility[1],

                              Respondent.

─────────────────────────────────

APPEARANCES:                          OF COUNSEL:

KILROY BROWN
Petitioner pro se
14-B-1246
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508

HON. LETITIA JAMES                    MARGARET A. CIEPRISZ, ESQ.
Attorney for Respondent               Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

THOMAS J. MCAVOY
Senior United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

        Petitioner Kilroy Brown ("Petitioner") seeks federal habeas corpus relief pursuant to 28

U.S.C. § 2254.  Dkt. No. 1 ("Petition").  On November 6, 2019, the Court directed Petitioner

to file an affirmation explaining why the statute of limitations should not bar his petition.  Dkt.

─────────────────

        [1]  Edward Burnett, Superintendent, Fishkill Correctional Facility, is substituted for E. Bell, Superintendent, Clinton Correctional Facility.  Fed. R. Civ. P. 25(c).

No. 5.  Petitioner timely filed said affirmation.  Dkt. No. 6.  The Court then directed Respondent to answer the petition.  Dkt. No. 7.

Respondent opposed the petition, but does not contest the petition's timeliness.  Dkt. No. 15, Memorandum of Law in Opposition; Dkt. No. 16, Answer; Dkt. No. 17, State Court Records.  Despite being afforded the opportunity to file a traverse, Petitioner did not respond to Respondent's brief and did not ask for an extension of time.  Dkt. No. 19.

For the reasons that follow, the habeas petition is denied and dismissed.

## II.   RELEVANT BACKGROUND

### A.  Arrest and Indictment

On July 2, 2013, Reginald Cromwell ("Cromwell") was shot outside a bar on Rutger Street in Utica, New York.  SR. at 25-26.[2] *Id.*  On July 10, 2013, Cromwell provided a written statement describing the assailant as a black male, in his late twenties or early thirties, approximately 5'10" to 6'1" in height "with a stocky muscular build."  *Id.* at 25.  During the police investigation, Cromwell viewed a photo array containing six photographs of black males and identified Petitioner as the assailant.  *Id*. at 26.

On August 27, 2013, Petitioner was arrested.  SR. at 9.

On January 23, 2014, an Oneida County grand jury returned an Indictment charging Petitioner with attempted second degree murder, first degree assault, first degree criminal use of a firearm, and second degree criminal possession of a weapon.  SR. at 1-2.  On January 27, 2014, Petitioner was arraigned and entered a plea of not guilty.  *Id*. at 57.

---

[2] "SR" refers to the state court record, found at Dkt. No. 17-1.  "TR" refers to the plea and sentencing transcripts, found at Dkt. No. 17-2.  Citations to the submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

### B.  Plea and Sentencing Proceedings

On February 24, 2014, Petitioner and his counsel Gregg Starzewski, Esq., appeared in Oneida County Court for a plea hearing.  TR. at 2-18.  The parties acknowledged their agreement to the following plea: Petitioner would plead guilty to assault in the first degree, in full satisfaction of the indictment, in exchange for a sentence of ten years as a second violent felony offender and five years post-release supervision.  *Id.* at 3.

During the hearing, Petitioner stated he had enough time to discuss the case and plea agreement with his counsel and indicated he had no questions of the court or his counsel.  TR. at 3-4, 7.  Petitioner also stated he had not been promised anything or threatened into pleading guilty.  *Id.* at 4.  Petitioner was placed under oath.  *Id*. at 4.  Petitioner stated he understood the agreement and had no questions about its terms.  *Id.* at 4.  Petitioner represented he could understand English and the proceedings, and had not taken any medication or drugs which would impair his thinking.  TR. at 4-5.

The trial court then explained the myriad of trial rights to which Petitioner was entitled and agreed to waive as a condition of the plea agreement.  TR. at 5-7.  Petitioner was presented with, and signed, a waiver of appeal form.  *Id.* at 7.  The court engaged in a colloquy with Petitioner whereupon he admitted to shooting Cromwell with the intention to cause serious physical injury.  *Id*. at 8.

The Court concluded "defendant understands his rights, he's fully discussed them with counsel, and at this time he's prepared to waive or give up his right to have a jury trial in this matter."  TR. at 9.  The Court was "convinced" Petitioner entered the plea "freely, knowingly, and voluntarily" and adjourned the matter for sentencing.  *Id*.

On April 14, 2014, Petitioner was sentenced as a second violent felony offender to a ten-year determinate sentence followed by five years post-release supervision.  TR. at 16.

On April 18, 2014, Petitioner's counsel filed a notice of appeal.[3]  SR. at 6.

### C. First Motion to Vacate Judgment

On April 20, 2017, Petitioner filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10.  SR. at 7-37.   In the motion, Petitioner represented to the court that, on May 16, 2016, in response to a Freedom of Information Law ("FOIL") request to obtain copies of documents created during the Utica Police Department's investigation, Petitioner received the following:

> (1) an Incident Report dated July 2, 2013 with a Narrative indicating, "[w]hile at the Hospital[,] I spoke to Cromwell regarding this incident at which time Cromwell stated he did not know what happen[ed] and stated this several times[]" and a notation indicating the suspect had a "large build";
>
> (2) an undated Addendum to the Incident Report indicating that the suspect had a "medium build"[4]; and
>
> (3) a statement by Brandon Schmidt, a bartender at Two J's, which included a description of the suspect as a black male, with a baseball hat.

SR. at 11, 30, 32, 34-35.  Petitioner annexed the aforementioned documents to the motion and argued the prosecution improperly withheld the *Brady* material[5] and that, as a result of the suppression, his guilty plea was not knowingly, intelligently or voluntarily entered.  *Id*. at 12-15.  Petitioner also claimed his counsel was ineffective for:  (1) failing to allow Petitioner to

---

[3]  Petitioner has not perfected his appeal.  Dkt. No. 16 at 1.

[4]  The state court identified this report as the "arrest report."  SR. at 59.

[5]  *Brady v. Maryland*, 373 U.S. 83 (1963).

4

testify before the grand jury; (2) failing to file a motion indicating Petitioner's willingness to testify; and (3) failing to present his nephew, Antonio Brown ("A. Brown"), as a witness before the grand jury. In support of his request, Petitioner filed an affidavit, written by his nephew. SR. at 28. In the statement, A. Brown described Petitioner as "kind of chubby, and somewhat flabby, he had a medium build, medium height, and his stomach poked out a little. He was not stocky nor was he muscular." *Id*.

The People opposed Petitioner's § 440 motion. SR. at 38-46. The People claimed prosecutors maintain "an open file" policy and "turn over all items received unless prohibited by law." *Id*. at 38. The People also pointed to Petitioner's sworn statements during the plea hearing including his assurance, under oath, that he understood the ramifications of pleading guilty. *Id*. at 38-39. Finally, with respect to Petitioner's ineffective assistance of counsel argument, the People provided the following: (1) a copy of the notice to appear before the grand jury which was served upon Petitioner's counsel on January 8, 2014; (2) a request to appear before the grand jury, dated September 4, 2013, filed by Petitioner's counsel; and (3) a copy of correspondence from Petitioner's counsel, dated January 7, 2014 indicating his client would not testify before the grand jury. *Id.* at 39, 41, 43-45.

Petitioner filed a reply to the opposition. SR. at 47-50.

Assistant District Attorney Joseph Saba ("ADA Saba"), the attorney who prosecuted Petitioner's case, filed an affirmation on behalf of the People. SR. at 51-52. ADA Saba averred that Petitioner filed a request, through his counsel, to appear before the grand jury to offer testimony and evidence on his own behalf. *Id*. at 51. ADA Saba also stated that Petitioner's counsel advised him, during a telephone conversation on January 7, 2014, that Petitioner would not testify before the grand jury. *Id.* ADA Saba also received a letter from

5

counsel confirming that decision.  *Id.* at 51-52.  After Petitioner's arraignment, ADA Saba met with Petitioner's counsel and provided him with copies of all documents, police reports, and the supporting deposition.  SR. at 52.  ADA Saba did not provide copies of the photo arrays. *Id.*

Petitioner's counsel filed an affirmation in response to Petitioner's allegations.  SR. at 53-55.  Attorney Starczewski indicated he was assigned by the local City Court of Utica to represent Petitioner.  *Id*.  Counsel affirmed that he faxed and sent, via US mail, a notice on behalf of his client preserving Petitioner's right to testify before the grand jury.  *Id.* at 54. Sometime later, counsel visited with Petitioner and "thoroughly discussed the nature and relevance of grand jury proceedings."  *Id*.  After that discussion, counsel concluded, "it was clear that [Petitioner] did not want to testify or call any witnesses to the grand jury proceeding."  SR. at 54.  Thus, counsel "promptly" notified ADA Saba in written correspondence.  *Id*.  Counsel claimed ADA Saba provided all pertinent discovery material, including "the document in which Cromwell identified [Petitioner] as the perpetrator" and the photo array.  *Id*.  Counsel claimed that he provided copies of all material to Petitioner, except documents pertaining to the photo array (which were not provided by ADA Saba), and informed Petitioner that Cromwell identified Petitioner as the perpetrator.  *Id*.

On August 1, 2017, the Oneida County Court denied Petitioner's § 440 motion.  SR. at 56-74.  The court first determined that the sworn statements of counsel were credible and, as such, found that Petitioner failed to meet his burden of proving that the documents received pursuant to his FOIL request were, in fact, suppressed by the prosecution.  *Id*. at 62. Moreover, the court concluded that the documents/information did not directly inculpate or exculpate Petitioner, or anyone else, as the perpetrator of the shooting.  *Id*. at 62-64.

6

Second, the court found Petitioner's claims related to his guilty plea lacked merit.  The court reiterated that the prosecution did not withhold *Brady* material and also concluded that "defendant never contested the allegation that he was the person who shot the victim."  *Id*. at 65, 67.  Finally, with respect to Petitioner's ineffective assistance of counsel claim, the court examined the documentary evidence submitted by the People and Petitioner's counsel and found Petitioner's "allegations to be neither credible, nor worthy of belief, inasmuch as they are clearly refuted by unquestionable documentary proof."  SR. at 69-71.  Similarly, the court reviewed A. Brown's statement and held, "defendant has failed to meet his burden of establishing that the outcome of the Grand Jury proceeding would have been different had Antonio Brown testified."  *Id*. at 72-73.

Petitioner filed an application for permission to appeal.  SR. at 84.  The Appellate Division, Fourth Department ("AD") denied Petitioner's request.  *Id*. at 104.  Petitioner filed an application for re-argument.  *Id*. at 106.  The AD denied the application.  *Id*. at 116.  On June 21, 2018, the Court of Appeals also denied Petitioner's application for leave to appeal.  *People v. Brown*, 31 N.Y.3d 1115 (2018).

### D.  Second Motion to Vacate Judgment

On November 16, 2018, Petitioner filed a second pro se CPL § 440 motion to vacate his conviction.  SR. at 118-131.  Petitioner argued his counsel was ineffective because he failed to investigate a potential witness, Kent Kelly ("Kelly"), and failed to secure Kelly's testimony before the grand jury.  *Id.*  In support, Petitioner provided an affidavit executed by Kelly on October 25, 2018.  SR. at 134-135.  In the statement, Kelly claimed Petitioner and his friend "D" came to his home on July 2, 2013 and "told me that they just came from Utica New York and that 'D' shot somebody earlier that day at a bar called Two J's."  *Id*. at 134.

7

According to Kelly, Petitioner called him in September 2013 and said he was "locked up for that shooting that D did" and asked Kelly if he would testify. *Id*. Kelly claims he agreed to testify, but never received a call from Petitioner's counsel. *Id*. at 134-135. Kelly alleged he lost contact with Petitioner in 2016 and "regained contact with him [in 2018]." SR. at 135.

In the motion, Petitioner also claimed that his counsel was ineffective because he failed to disclose the material outlined in the prior § 440 motion and the following additional material: (1) a statement by "Robert[6];" (2) a video recording from the interior of the bar; and (3) evidence of Cromwell's past convictions.[7] *Id*. at 126, 172.

The People opposed Petitioner's § 440 motion. SR. at 159-160. The People argued that Petitioner's guilty plea eliminated the need to examine the issue of whether another unidentified party was responsible for the shooting. *Id*. at 160.

Petitioner filed a reply to the opposition. SR. at 161-164.

On January 30, 2019, the Oneida County Court denied Petitioner's second § 440 motion. SR. at 165-177. The court rejected Petitioner's claim that his counsel was ineffective for failing to investigate Kelly because: (1) Petitioner was aware of Kelly's existence and the alleged exculpatory information before he was indicted, entered a plea, or was sentenced; (2) Kelly was not credible; and (3) the claim was subject to dismissal pursuant to CPL § 440.10(3)(c).[8] *Id*. at 169-170.

---

[6] An Addendum to the Incident Report contains statements from "Maurice" and "Robert" who were in the waiting room at St. Elizabeth's hospital. SR. at 148. While Robert's last name was not provided, Maurice is identified as the victim's brother. *Id*. According to the report, Robert described the suspect as having a "stocky build." *Id*.

[7] Petitioner obtained Robert's statement and the video through a FOIL request and Cromwell's history from "other sources." Dkt. No. 1 at 6.

[8] Section 440.10(3)(c) provides:

> [T]he court may deny a motion to vacate a judgment when ... [u]pon a previous motion made

8

The court also found Petitioner's claim that counsel was ineffective because he failed to ensure that Kelly testified before the grand jury, to be without merit.  SR. at 170.  The court reasoned that Petitioner failed to reveal the alleged exculpatory information for four years and failed to report the information to police, the prosecutor, or his attorney and neglected to raise this issue in the prior motion.  *Id*. at 170-171.  Moreover, the court noted that Petitioner failed to demonstrate that Kelly would have provided relevant, truthful, or admissible testimony.  *Id*.  The court also credited the statement by defense counsel in his affirmation in opposition to the prior motion to vacate that, "after deponent's discussions with the defendant, it was clear that he did not want to testify or call any witnesses to the grand jury proceeding."  *Id*. at 171.

Finally, the court addressed Petitioner's argument regarding counsel's failure to disclose or use the alleged *Brady* information.  SR. at 172-175.  Citing to CPL § 440.10(3)(b), the court refused to discuss "this same *Brady* argument."[9]  *Id*. at 174.  More importantly, the court noted, Petitioner's guilty plea precluded any cross-examination and thus, counsel would not have had an opportunity to use the information to impeach witnesses.  *Id*. at 175.

---

> pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so. Although the court may deny the motion under any of the circumstances specified in this subdivision, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious and vacate the judgment.

N.Y. CPL § 440.10(3)(c).

[9]   Section 440.10(3)(b) provides:

> T]he court may deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon a prior motion or proceeding in a court of this state, other than an appeal from the judgment, or upon a motion or proceeding in a federal court; unless since the time of such determination there has been a retroactively effective change in the law controlling such issue[.]

N.Y. CPL § 440.10(3)(b).

9

Petitioner filed an application for permission to appeal.  SR. at 178-194.  The AD denied Petitioner's request.  *Id.* at 195.

## III.   PETITION

Petitioner contends that he is entitled to federal habeas relief (1) due to the prosecutor's failure to disclose *Brady* material; (2) because his guilty plea was unintelligent and involuntary; and (3) because his counsel was constitutionally ineffective.  Dkt. No. 1.

## IV.   DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per

curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

## B. *Brady* Claim

Petitioner claims the prosecutor failed to disclose the following: (1) a July 2, 2013

11

Incident Report; (2) an addendum to the Incident Report; (3) Schmidt's statement; (4) Robert's statement; (5) video footage; and (6) evidence of Cromwell's past convictions.  Dkt. No. 1 at 6.  Respondent argues that the *Brady* claims partially unexhausted and lack merit.[10] *Id.*

### 1. Cromwell's Statement, Addendum, and Schmidt's Statement

The *Brady* claim related to this material was raised in the first CPL § 440 motion.  The state court rejected Petitioner's claims reasoning that Petitioner failed to establish that the prosecution suppressed evidence and that, in any event, the evidence did not constitute *Brady* material.  SR. at 58-64 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).  The rule announced in *Brady* is clearly established for purposes of the AEDPA.  *See Nance v. Bennett*, No. 99-CV-6308, 2004 WL 1858139, at *5 (W.D.N.Y. Aug. 16, 2004); *Huber v. Schriver*, 140 F.Supp.2d 265, 274 (E.D.N.Y.2001); *Brooks v. Artuz*, No. 97 CIV. 3300, 2000 WL 1532918, at *5 (S.D.N.Y. Oct. 17, 2000) (citations omitted).  This Court must therefore determine whether the state court's decision rejecting this aspect of Petitioner's claim is contrary to, or represents an unreasonable application of *Brady* and its progeny.

For the Court to determine whether the ruling was "contrary to" or an "unreasonable application" of federal law, the alleged *Brady* violation must be analyzed.  In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  To prove a *Brady* violation, a habeas petitioner must establish that:  (1) the evidence at issue

---

[10] Respondent also argues that Petitioner's *Brady* challenges are foreclosed by his guilty plea.  Dkt. No. 15 at 17-24.  Because Petitioner challenges the validity of his guilty plea, the alternative argument is discussed *infra*.

was favorable to the accused either because it was exculpatory or could have impeached a

prosecution witness; (2) the evidence was suppressed by the prosecution either willfully or

inadvertently; and (3) prejudice ensued from the withholding.  *Moore v. Illinois*, 408 U.S. 786,

794-95 (1972); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

     After carefully reviewing the state court record, the Court concurs with the state court's

determination that Petitioner failed to establish a *Brady* violation.  It is well settled that "the

mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas

relief."  *Mallet v. Miller*, 432 F.Supp.2d 366, 377 (S.D.N.Y. 2006) (citing *Strickler*, 527 U.S. at

286 ("Mere speculation that some exculpatory material may have been withheld is unlikely to

establish good cause for a discovery request on collateral review.")); *U.S. v. Avellino*, 136

F.3d 249, 256 (2d Cir. 1988) ("In the absence of a proffer by [defendant] of any

nonspeculative basis for inferring that . . . the government had not made available to him all

pertinent material in its possession, it was well within the discretion of the court to conclude

that no evidentiary hearing was necessary.")).

     As discussed *supra*, ADA Saba provided an affirmation in opposition to Petitioner's

first CPL § 440 motion and stated he provided Petitioner's counsel with copies of all

documents, police reports, and supporting deposition.  SR. at 52.  ADA Saba's proclamations

related to the disclosure of all pertinent material are supported by Petitioner's counsel's

affirmation.  Petitioner's counsel averred that ADA Saba provided all pertinent discovery

material, including "the document in which Cromwell identified [Petitioner] as the perpetrator"

and the photo array.  *Id*.  Petitioner's counsel also stated that he provided copies of all

material to Petitioner, except documents pertaining to the photo array (which were not

provided by ADA Saba), and informed Petitioner that Cromwell identified Petitioner as the

13

perpetrator.  *Id*.  The state court found counsels' sworn statements to be "credible and worthy of belief."  SR. at 62.

The state court is "entitled to credit the testimony of [P]etitioner's counsel[.]" *Turner v. Dzurenda*, 596 F.Supp.2d 525, 535 (D. Conn. 2009), *aff'd*, 381 Fed. App'x 41 (2d Cir. 2010).  The record before this Court lacks any evidence contradicting Petitioner's counsel's assertions or ADA Saba's proclamations.  Therefore, because Petitioner's speculation that the prosecution withheld information is unsupported and contradicted by sworn statements submitted by two attorneys, Petitioner's claims are insufficient to warrant habeas relief.

The state court also ruled that the material was not "clearly exculpatory[.]"  SR. at 62.  The court noted that Cromwell's July 2, 2013 statement did not exculpate Petitioner or "inculpate another person."  *Id*. at 63.  Moreover, the "slight difference in [ ] subjective characterizations" of Petitioner's stature (as set forth in the July 2, 2013 incident report and the arrest report) did not exculpate Petitioner.  *Id*. at 63-64.  Finally, the court noted that Schmidt's statement did not directly inculpate or exculpate Petitioner because he did not witness the shooting and did not identify anyone as the perpetrator of the crime.  *Id*. at 63-64.

Suppressed evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *U.S. v. Madori*, 419 F.2d 159 (2d Cir. 2005); *U.S. v. Bagley*, 473 U.S. 667, 681-82 (1985); *U.S. v. Carrington*, No. 02 CR. 897, 2002 WL 31496199, at *2 (S.D.N.Y. Nov. 7, 2002) ("[o]nly evidence that is material, as defined by the reasonable probability test set forth in *Bagley*, must be disclosed under *Brady*") (citations omitted).  The "mere possibility that an

14

item of undisclosed information might have helped the defense or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *U.S. v. Agurs*, 427 U.S. 97, 109–110 (1976).  In the context of a guilty plea, favorable evidence is material if there is a "reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but would instead have insisted on going to trial." *Avellino*, 136 F.3d at 256 (quoting *Tate v. Wood*, 963 F.2d 20, 24 (2d Cir. 1992)); *Hayes v. Lee*, No. 11-CV-1365, 2015 WL 5943677, at *31 (S.D.N.Y. Oct. 13, 2015) (internal quotation marks omitted) (quoting, *inter alia, U.S. v. Danzi*, 726 F.Supp.2d 120, 131 (2d Cir. 2010)).

With this application, Petitioner reiterates his contention that Cromwell's July 2, 2013 initial statement and that the differing descriptions of the suspect suggest that he was improperly identified.  SR. at 127.  However, Petitioner did not establish, in either the state court, or the present action, that the July 2, 2013 incident report, arrest report, or Schmidt's statement suggest that an individual who had not been indicted for the crime was the perpetrator.  The varying vague descriptions of Petitioner's physical stature are not material to Petitioner's actual guilt or innocence because Petitioner does not claim he is innocent. Indeed, Petitioner admitted to being in the bar with Cromwell, engaging in an oral and physical altercation with Cromwell, shooting Cromwell, and intending to cause physical injury. *See Martinez v. Chandler*, No. 11-2277, 2012 WL 2413512, at *5 (C.D. Ill. June 26, 2012) (holding that even assuming descriptions of the suspect did not match the petitioner, "while this evidence may have been somewhat helpful to petitioner," the evidence related to the charge was "still compelling" and the petitioner did not dispute his involvement).  Moreover, Cromwell positively identified Petitioner in a photo array.  Accordingly, Petitioner has not

15

established that the admission of this evidence would have changed the outcome of the proceedings.  *See Landy v. Costello*, 141 F.3d 1151 (2d Cir. 1998) (holding that because the "evidence would not have outweighed the overwhelming evidence of petitioner's guilt[,]" it was not material).

Since Petitioner has failed to establish that the state court's decision denying his *Brady* claims is either contrary to, or an unreasonable application of *Brady* and its progeny, this Court denies the *Brady* claims related to the aforementioned evidence.

### 2. Robert's Statement, Video Footage, and Cromwell's Criminal History

#### a. Exhaustion

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (B)(I), (ii).  To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).  In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

16

Respondent alleges that Petitioner's claim related to the prosecution's failure to disclose this material is unexhausted because, while Petitioner raised the argument that his counsel was ineffective for not alerting Petitioner to the existence of these items, Petitioner did not claim that these items were improperly withheld by the prosecution.  Dkt. No. 15 at 17-18.

In the Order denying Petitioner's second § 440 motion and the argument that counsel failed to inform him of certain *Brady* material, the state court made a record of the examples of the *Brady* material and included Robert's statement, the video footage, and Cromwell's criminal history.  SR. at 173.  The state court held, "as set forth in the Court's prior Decision and Order, not all of the aforementioned cited by defendant is per se *Brady* material[.]"  *Id*. at 174.

The exhaustion inquiry focuses on "whether the factual issue was presented to the state courts in a posture allowing full and fair consideration.  Where such consideration was given the issue by the state courts, the federal district court will presume the correctness of the state court's factual determinations."  *Smith v. Atkins*, 678 F.2d 883, 885 (10th Cir. 1982) (citing *Sumner v. Mata*, 449 U.S. 539 (1981)).  While Respondent is correct that the "exact issue" of whether the prosecution suppressed Robert's statement, the video footage, and Cromwell's history, was not presented in the second § 440 motion, this Court need not make a determination with respect to whether the claims were properly exhausted because, as Respondent correctly states, Petitioner could still present his unexhausted claim to the state courts by filing a successive CPL § 440.10 motion.  Dkt. No. 15 at 18.  There is no time limit within which an individual must bring a section 440.10 motion, and the statute specifically states that a motion to vacate may be made "[a]t any time after the entry of a judgment[.]"

CPL § 440.10(1).

Section 2254 "prohibits federal courts from granting relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)).  Unexhausted claims may be denied on the merits if the claims are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous."  *McFadden v. Senkowski*, 421 F.Supp.2d 619, 621 (W.D.N.Y. 2006); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Because Petitioner's claim fails under either standard, the Court will dispose of it.

**b.  Merits**

First, as discussed *supra*, the Court credits the affirmations of ADA Saba and Petitioner's counsel and finds no support for Petitioner's claim that the prosecution suppressed any evidence.

Second, while Petitioner argues that Robert's description of the suspect contradicts Schmidt's description; to wit, Robert claimed the suspect's "hair had waves" and Schmidt stated that the suspect wore a baseball hat.  SR. at 146, 148.  As discussed *supra*, minor inconsistencies in the description of Petitioner's physical appearance were not material to Petitioner's guilty or innocence.  Moreover, the record establishes that Robert did not witness the shooting and was not present at the scene of the incident.  Therefore, his statements are not material evidence under *Brady*.  *See Hill v. West*, 599 F.Supp.2d 371, 380 (W.D.N.Y.

2009) (holding that a statement obtained via a FOIA request was not material because the statement was based on hearsay accounts and the proponent did not witness the shooting).

Third, with respect to the video, Petitioner admits he has not personally viewed the video footage.  SR. at 128, n.9.  Thus, any *Brady* argument Petitioner sets forth with respect to the video footage is unreliable and lacks merit.  *See Carrasquillo-Fuent v. Noeth*, No. 9:18-CV-0415 (GTS), 2020 WL 3833064, at *6 (N.D.N.Y. July 8, 2020) (rejecting *Brady* claim where the petitioner failed to demonstrate that a video recording proved he was innocent).

Finally, with respect to Cromwell's criminal history, courts have held that "[d]ocuments that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation."  *U.S. v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995);  *U.S. v. Jones*, 34 F.3d 596, 599-600 (8th Cir. 1994) (finding no *Brady* violation because evidence of witness' convictions was a matter of public record), *cert. denied*, 514 U.S. 1067 (1995);  *Owens v. Guida*, 549 F.3d 399, 418 (6th Cir. 2008) ("*Brady* does not apply when the information is available from another source, [. . .] because the information not disclosed could have been deduced by looking at public records.");  *see also Washington v. Brown*, No. 09-CV-544, 2009 WL 1605553, at *4 (E.D.N.Y. June 8, 2009) (holding that the prosecution did not violate *Brady* by refusing to disclose criminal records).  Here, Petitioner admits that he discovered evidence of Cromwell's criminal history when he "went to the prison facility law library and looked Cromwell up on the library computer."  SR. at 123, 158.  Accordingly, Petitioner has not established that the prosecution violated its obligation under *Brady* with respect to Cromwell's history.

For the foregoing reasons, this Court finds that Petitioner is not entitled to habeas relief based upon alleged *Brady* violations.

### C.  Petitioner's Guilty Plea

Petitioner contends his guilty plea was not made knowingly and intelligently due to the prosecution's failure to disclose evidence.  Dkt. No. 1 at 6.

Ordinarily, once a defendant pleads guilty in open court, he or she may not "thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea" because the plea "represents a break in the chain of events which has preceded it in the criminal process."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Therefore, the focus of federal habeas review is the nature of the advice of counsel to plead guilty and the voluntariness of the plea, "not the existence as such of an antecedent constitutional infirmity."  *Id*. at 266; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (stating that relevant inquiry for the federal habeas court was whether the guilty plea "represent[ed] a voluntary and intelligent choice among the alternative courses of action open to the defendant").

In order to comply with constitutional due process protections, a guilty plea must be knowing, voluntary and intelligent.  *See U.S. v. Ruiz*, 536 U.S. 622, 628-689 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)); *Brady v. United States*, 397 U.S. 742, 748 (1970)).  "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the [petitioner]."  *Ferrer v. Superintendent*, 628 F.Supp.2d 294, 304 (N.D.N.Y. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quotation marks omitted)).

> Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed and was fully aware of the nature of the charges faced; 2) had a rational and

> factual understanding of the proceedings; and, 3) was cognizant of
> the constitutional protections relinquished upon entry of the plea.

*Capra v. LeClair*, No. 9:06-CV-1230 (GTS/DEP), 2010 WL 3323676, at *9 (N.D.N.Y. Apr. 12,

2010) (citing *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004)).

In evaluating whether a plea was knowing and voluntary, a court may consider,

"among other things, [petitioner's] allocution statements." *Carpenter v. Unger*, 9:10-CV-1240

(GTS/TWD); 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014)

(citing *U.S. v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

> [T]he representations of the [petitioner], his lawyer, and the
> prosecutor at such a hearing, as well as any findings made by the
> judge accepting the plea, constitute a formidable barrier in any
> subsequent collateral proceedings. Solemn declarations in open
> court carry a strong presumption of verity. The subsequent
> presentation of conclusory allegations unsupported by specifics is
> subject to summary dismissal, as are contentions that in the face of
> the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Padilla v. Keane*, 331 F.Supp.2d

209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his

allocution that he fully understands the consequences of his plea and that he has chosen to

plead guilty after a thorough consultation with his attorney, a district court on habeas review

may rely on [petitioner's] sworn statements and hold him to them.").

Petitioner raised this argument in his first section 440 motion.  The court rejected the

allegations concluding that the People did not withhold *Brady* information and because "a

guilty plea . . . generally marks the end of a criminal case, not a gateway to further

litigation[.]"  SR. at 65-66.  The state court also reasoned, "defendant never contested the

allegation that he was the person who shot and injured the victim" and the minor

inconsistencies related to Petitioner's physical appearance "do not negate defendant's

21

unequivocal admission that he was present at the bar, that he argued with Mr. Cromwell, and that he shot Mr. Cromwell during the course of that argument." *Id.* at 67-68.

As set forth in Part IV(B) *supra*, this Court agrees with the state court determination that the prosecution did not suppress exculpatory evidence.  However, even if the evidence established that the prosecution withheld evidence, Petitioner's challenge to his guilty plea lacks merit.  *See Porath v. Miller*, No. 9:15-CV-00091 (JKS), 2016 WL 3172872, at *2-4 (N.D.N.Y. June 6, 2016) ("the Supreme Court has never held that exculpatory material [. . .] must be disclosed prior to a guilty plea"); *Ruiz*, 536 U.S. at 623 ("[t]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant," because "impeachment evidence is special in relation to a trial's fairness, not in respect to whether a plea is voluntary"); *Friedman v. Rehal*, 618 F.3d 142, 154-55 (2d Cir. 2010)*; see Carrasquillo v. Heath*, No. 10-CV-5639, 2017 WL 4326491, at *7 (E.D.N.Y. Sept. 28, 2017) (holding that there is no clearly established federal law requiring the production of potentially exculpatory or impeachment evidence prior to a defendant's guilty plea); *see also Proctor v. McCarthy*, No. 19-CV-2988, 2020 WL 1149660, at *18 (S.D.N.Y. Mar. 10, 2020) (assuming the evidence was exculpatory, the petitioner's guilty plea "negated the need for the jury trial").

Moreover, Petitioner's admissions during the plea hearing belie his claim that his plea was not knowingly entered.  Petitioner's assurances that counsel explained the charges and options to him and that he understood the rights he was giving up by pleading guilty and the consequences of his plea, including his appeal waiver, *see* TR. at 3-7, and are entitled to the "weighty presumption[s] favoring the veracity of a defendant's sworn plea of guilty[.]" *Doe v. Menefee*, 391 F.3d 147, 173 (2d Cir. 2004); *see also Blackledge v. Allison*, 431 U.S. 63, 74

22

(1977).

Therefore, Petitioner's claim for habeas relief, on this ground, is denied.

### D.  Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective because he failed to arrange for Petitioner, A. Brown, and Kelly to testify before the grand jury and failed to disclose *Brady* material.  Dkt. No. 1 at 10, 13.  Respondent argues that Petitioner's claims are procedurally barred, foreclosed by his guilty plea, and lack merit.  Dkt. No. 15 at 27-35.

#### 1.  Procedural Bar

"Federal habeas review of a state court decision is prohibited if the state court rested its judgment on an adequate and independent state ground."  *Harris v. Reed*, 489 U.S. 255, 261–62 (1989); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir.1999).  "[T]his rule applies whether the state law ground is substantive or procedural."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  If the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a habeas petition.  *Harris*, 489 U.S. at 264 n. 10.

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (" '[A]ctual innocence' means factual innocence, not mere legal insufficiency.") (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  To establish cause, a petitioner must show that some objective external factor impeded his ability to

23

comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

A state court's rejection of a petitioner's claim pursuant to CPL § 440.10 rests upon an independent and adequate state ground and federal review of the claim is thus barred. *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008); *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003). That is true even if the state court also rejects the claims on other grounds in the alternative. *See Harris*, 489 U.S. at 264 n. 10 ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

Here, there was a sufficient basis for the state court to rule that Petitioner's CPL § 440.10 motion related to counsel's failure to ensure that Kelly would testify before the grand jury was procedurally barred because the Petitioner was in a position to adequately raise the issue in the first motion and failed to do so. *See* N.Y. CPL § 440.10(3)(c). Similarly, the decision by the state court to deny the ineffective assistance of counsel claim based upon *Brady* because Petitioner raised the same claim in his first § 440.10 motion, operates as a procedural bar to habeas review. *See* CPL § 440.10(3)(b); *see Garner v. Superintendent of Upstate Corr. Facility*, No. 9:01-CV-0501 (LEK/DEP), 2007 WL 2846907, at *20 (N.D.N.Y. Sept. 26, 2007); *Waters v. Martuscello*, No. 10-CV-5700, 2014 WL 1276957, at *8 (E.D.N.Y. Mar. 27, 2014). Petitioner has not alleged or established cause for the default and therefore,

24

the Court need not decide whether he suffered actual prejudice.  *See Murray*, 477 U.S. at

496; *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (same).  Finally, Petitioner has not

produced any new evidence that he is actually innocent, and there is no basis to conclude

that the failure to consider the merits of this claim would result in a fundamental miscarriage

of justice.  *House*, 547 U.S. at 536–39; *Schulp*, 513 U.S. at 327.

### 2.  Legal Effect of Guilty Plea

Even assuming Petitioner could demonstrate cause and prejudice, Petitioner's

ineffective assistance of counsel claims are foreclosed by his guilty plea.  "In the context of a

guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's

deficient performance, the petitioner would not have pleaded guilty and instead would have

exercised his or her right to trial." *Beckary v. Chappius*, No. 1:11-CV-0850, 2012 WL

3045691, at *9 (W.D.N.Y. July 25, 2012) (citing *Hill*, 474 U.S. at 58-59).  A petitioner is

limited to "attack[ing] the voluntary and intelligent character of the guilty plea by showing that

the advice he received from counsel was not within acceptable standards."  *Id.* (internal

quotation marks and citations omitted).

Any claims "which involve counsel's pre-plea actions and do not affect the

voluntariness of the plea itself [are] waived by [a] voluntary, knowing, and intelligent guilty

plea." *Beckary*, 2012 WL 3045691, at *10.  Here, Petitioner's ineffective assistance claims

are waived because, as previously discussed, Petitioner's plea was knowing, intelligent, and

voluntary, and these claims involve pre-plea actions.  *See Proctor v. McCarthy,* No. 19-CV-

2988, 2020 WL 1149660, at *19 (S.D.N.Y. Mar. 10, 2020) (holding that the allegation that

counsel was ineffective for failing to investigate or otherwise challenge defects in the grand

jury proceedings were "pre-plea claims"); *see Rosado v. Lempke*, No. 12-CV-3512, 2015 WL

25

5560363, at *7 (E.D.N.Y. May 9, 2015) (holding that the petitioner's claim that he was not afforded the opportunity to testify in front of the grand jury involved "pre-plea proceedings" and was not cognizable on habeas review), *report and recommendation adopted*, 2015 WL 5567053 (E.D.N.Y. Sept. 21, 2015); *see Cobb v. Unger*, No. 09-CV-0491, 2013 WL 821179, at *5 (W.D.N.Y. Mar. 5, 2013) (concluding that the failure to request *Brady* material involved counsel's pre-plea actions and did not impact the voluntariness of the plea); *U.S. v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) ("a guilty plea . . . conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]").

### 3. Merits

In any event, no relief would issue.  To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Premo v. Moore*, 562 U.S. 115, 121-22 (2011).  The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]"  *Premo*, 562 U.S. at 122.  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."  *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).  A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be

26

considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice.  *Id.* at 693-94.

Demonstrating constitutionally ineffective assistance of counsel is "never an easy task . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 562 U.S. at 122 (citations and internal quotation marks omitted); *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (noting that "AEDPA erects a formidable barrier" to federal habeas review of claims that have been adjudicated in state court).  When reviewing a state court's decision under section 2254, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted).  Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105.  Instead, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The *Strickland* test applies "to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *Hill*, 474 U.S. at 58).  To establish prejudice in this instance, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### a. Witnesses Before Grand Jury

"It is well-settled that a claim involving an error in a grand jury proceeding is not cognizable upon federal habeas review" because "[t]here is no federal constitutional right to a grand jury" and "any defect in the grand jury proceeding is cured by [a] petitioner's subsequent conviction." *Zimmerman v. Superintendent Conway*, No. 10-CV-1393, 2013 WL 12379648, at *23 (S.D.N.Y. May 7, 2013) (rejecting argument that trial court erred when it failed to dismiss the indictment on the ground that the petitioner was presented to the grand jury in shackles and surrounded by corrections officers) (internal quotation marks and citations omitted), *report and recommendation adopted sub nom*., 2018 WL 6413144 (S.D.N.Y. Dec. 6, 2018); *see also Bingham v. Duncan*, No. 01-CV-1371, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) ("[C]laims of error relating to state grand jury proceedings are not cognizable on federal habeas review, since '[t]he right to testify before a grand jury is a state statutory right, and is not of constitutional dimension.' ") (quoting *Green v. Artuz*, 990 F.Supp. 267, 273 (S.D.N.Y. 1998)).

Additionally, even if this claim was cognizable on federal habeas review, the claim is meritless. This Court must view the state court decisions through a doubly deferential lens. *See generally Cullen*, 563 U.S. at 190. In this regard, the state court credited defense counsel's sworn statements and found Petitioner's claims contradicted by documentary evidence. SR. at 69-73, 170-171. Regarding the proposed witnesses, the state court noted that A. Brown was not present during the events that gave rise to the charges before the grand jury and had no personal knowledge of the shooting or Petitioner's whereabouts at the time of the shooting. SR. at 73. The state court also found Kelly "not credible" and held that Petitioner failed to establish that Kelly "would be able to provide relevant, truthful, and admissible non-hearsay testimony in this matter." *Id*. at 170-171. Thus, the court concluded

28

that Petitioner failed to meet his burden of establishing that his nephew's testimony or Kelly's testimony would have changed the outcome of the proceeding.  *Id*. at 72-73, 171.

With this application, Petitioner claims that counsel admitted he did not submit a request for Petitioner or his witnesses to appear before the grand jury.  Dkt. No. 1 at 10, 13. Despite Petitioner's claims to the contrary, the record establishes that Petitioner's counsel properly filed and served a notice of Petitioner's intention to testify.  SR. at 43, 51, 54. The documentary evidence also supports Petitioner's counsel's contention that he "promptly" notified ADA Saba that Petitioner did not want to testify or call any witnesses.  *Id*. at 45, 51-52, 54.  Accordingly, the state court did not unreasonably apply federal precedent in crediting defense counsel's affirmation and concluding that Petitioner's claims were not credible and "clearly refuted by unquestionable documentary proof."  *Id*. at 71.

Even assuming Petitioner could establish the first prong of the *Strickland* test, Petitioner's claim that the outcome of the grand jury proceeding would have been different had he or his witnesses testified, is wholly conclusory.  "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess."  *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (internal quotation marks and citation omitted); *U.S. v. Luciano*, 158 F.3d 655, 660-62 (2d Cir. 1998) (to show prejudice from the failure of counsel to call witnesses, petitioner must show that the uncalled witnesses would have provided relevant testimony).  Petitioner's disagreement with a strategic decision not to call witnesses does not render counsel ineffective.  *Strickland*, 466 U.S. at 690-91.  To satisfy the prejudice prong of the *Strickland* test, Petitioner must demonstrate that had he or his witnesses testified before the grand jury, "there is a reasonable probability of a different outcome—that is, an indictment on no or fewer charges."

*Dearstyne v. Mazzuca*, 48 F.Supp.3d 222, 297 (N.D.N.Y. 2011).  Because the guilty plea cures any possible prejudice arising from the fact that he did not testify before the grand jury, "[i]t necessarily follows as a matter of law" that Petitioner cannot establish that any action or inaction by his counsel, with respect to the grand jury proceeding, resulted in prejudice. *Dozier v. Walsh*, No. 08 CIV. 4384, 2009 WL 1492217, at *3 (S.D.N.Y. May 28, 2009) (citation omitted); *Hutchings v. Herbert*, 260 F.Supp.2d 571, 578 (W.D.N.Y. 2003) (finding no prejudice where the petitioner did not state what he would have told the grand jury that would have prevented his indictment).

As the trial court stated during sentencing, Petitioner was convicted in 1993 of robbery in the first degree.[11]  TR. at 13.  Because Petitioner would have been asked questions about this prior conviction during the grand jury proceeding, it is unlikely that his testimony would have benefitted him.  *See Hutchings*, 260 F.Supp.2d at 578.  Similarly, with respect to testimony from A. Brown and Kelly, Petitioner did not demonstrate prejudice because the prosecution presented other evidence to the grand jury; including the victim's identification of Petitioner during a photo array. *See Turcio v. Ricci*, No. CIV. A. 09-3531, 2010 WL 2179155, at *16 (D.N.J. May 26, 2010) (finding no prejudice because the State presented "other reliable and compelling identification evidence" establishing that the defendant was present at the scene of the crime). Further, as noted *supra*, A. Brown could not testify as to Petitioner's whereabouts at the time of the shooting.  *See Williams v. Phillips*, 297 Fed. App'x 56, 58-59 (2d Cir. 2008) (counsel not ineffective for failing to prepare alibi witness where witness "did not account for [petitioner's] whereabouts during the entire time period in

---

[11]  Defense counsel described Petitioner as a "two time convicted felon."  SR. at 53.

question"); *Buitrago v. Scully*, 705 F.Supp. 952, 954 (S.D.N.Y.1989) (counsel not ineffective for failing to present alibi witness where petitioner fails to show witness knew where petitioner was at the time of the crime).  Moreover, the testimony proffered by Kelly would have been inadmissible as hearsay.  *See Barnes v. Burge*, 372 Fed. App'x 196, 199 (2d Cir. 2010).

Based on the foregoing, the state court's conclusion that Petitioner failed to establish prejudice because he did not show that his testimony, his nephew's testimony, or that of Kelly, would have changed the grand jury result was not unreasonable, or contrary to *Strickland*.  *Strickland*, 466 U.S. at 693–94, 689.

**b.  Failure to Disclose of *Brady* Material**

Petitioner alleges that counsel failed to disclose the existence of *Brady* material provided by the prosecution.  Dkt. No. 1 at 13.  Initially, addressing this claim, the state court noted, "[a]pparently, defendant now concedes that his trial attorney received the information," but was ineffective because he "did not act on it to attack the victim's credibility."  SR. at 174. The state court denied the motion to vacate on this ground noting, *inter alia*, that "because [Petitioner] entered a knowing and voluntary plea of guilty, no trial was conducted" and therefore, the alleged *Brady* material could not have been used to attack the victim's credibility at trial.  *Id*. at 174-175.

As discussed *supra*, this Court finds Petitioner's counsel's affirmations to be truthful and credible.  Thus, the record does not support the conclusion that counsel withheld any evidence, *Brady* or otherwise, from Petitioner.  Therefore, Petitioner's counsel could not have been ineffective for failing to disclose evidence that he did not possess.  *See U.S. v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) (the failure to make meritless arguments or objections cannot constitute ineffective assistance), *cert. denied* 531 U.S. 811 (2000).

In sum, the state court did not act contrary to, or unreasonably apply, clearly established Supreme Court precedent when denying Petitioner's various ineffective assistance of counsel claims. This ground is denied and dismissed.

## V.      CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk of the Court shall amend the caption to substitute Edward Burnett for E. Bell; and it is further

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[12] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**DATED:** October 27, 2021

Thomas J. McAvoy
Senior, U.S. District Judge

---

[12] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).